UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAWRENCE W.,

                        Plaintiff,

v.                                                     5:17-cv-0877
                                                            (TWD

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OLINKSY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St.
Suite 420
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.        FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

      Plaintiff Lawrence W. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was

not heard. For the reasons discussed below, the decision of the Commissioner is reversed and this case is remanded for further proceedings consistent with this Decision and Order.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Lawrence W. was born on June 14, 1988, and lives with his mother and sister. (T. 36, 49.[1]) He completed the ninth grade in special education classes and has no past relevant work. (T. 36, 200.) Plaintiff alleges disability due to mental retardation, asthma, and learning disabilities. (T. 71.)

On January 10, 2014, Plaintiff protectively filed an application for SSI, alleging disability as of June 14, 1988. (T. 72.) The application was denied on May 6, 2014, after which Plaintiff filed a written request for a hearing. (T. 71-81, 100.) A video conference hearing was held on October 23, 2015, before Administrative Law Judge ("ALJ") Paul Greenberg. (T. 42-70.) At the hearing, Plaintiff was represented by Megan Savai-Ortiz of Olinsky Law Group. *Id*. Plaintiff's mother and a vocational expert ("VE") also testified. *Id*.

After the hearing, on November 17, 2015, consultative examiner Sara Long, Ph.D., conducted both a psychiatric and intelligence evaluation. (T. 365-85.) On April 28, 2016, the ALJ issued a decision finding Plaintiff was not disabled. (T. 13-26.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 15, 2017. (T. 1-6.) Plaintiff timely commenced this action on August 9, 2017. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015).[2] In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520(a)(4). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

---

[2] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

4

(N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

The ALJ found Plaintiff has not engaged in substantial gainful activity since January 10, 2014, the application date. (T. 29.) He found Plaintiff suffers from the severe impairment of borderline intellectual functioning. (T. 29-31.) The ALJ determined Plaintiff does not have an impairment or combination of impartments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 31-33.) The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

5

> The claimant can perform jobs involving simple, routine, repetitive tasks. He can have frequent contact with supervisors, occasional contact with co-workers, and no contact with the public. The claimant can perform work requiring simple, job-related decisions. He must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants.

(T. 33-34.) In making this determination, the ALJ accorded "great weight" to the opinion of consultative examiner Sara Long, Ph.D., "substantial weight" to the opinion of State agency consultant G. Kleinerman, M.D., and "very little weight" to the school reports, intelligence testing, and opinions that pre-date the January 2014, application date. (T. 36.) The ALJ found Plaintiff has no past relevant work, a limited education, and is able to communicate in English. (T. 36.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 36-37.) The ALJ therefore concluded Plaintiff was not disabled. (T. 37.)

## IV. THE PARTIES' CONTENTIONS

The sole issue before the Court is whether the mental RFC is supported by substantial evidence. (Dkt. Nos. 9 and 10.) Plaintiff argues the ALJ committed legal error by failing to explain the inconsistency of a favorably weighed opinion with his RFC determination. (Dkt. No. 9 at 7-11.[3]) Defendant contends the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 10 at 8-13.)

## V. RECORD AND OPINION EVIDENCE

### A. Education Records

On March 29, 2006, the Syracuse City School District reviewed Plaintiff's Individualized Education Program ("IEP") plan. (T. 181.) At that time, Plaintiff was 17 years old and attended

---

[3] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

6

special education classes in a classroom with a 15:1 student/teacher ratio. (T. 181.) His math and reading skills were at a third grade level. (T. 183.) He was able to follow simple instructions, but all assignments had to be shown to him and explained. (T. 183.) He needed a structured small group setting with no distractions to succeed. *Id*. He needed reminders to start and complete assignments and to stay focused. (T. 184.) Modifications for testing included taking the test in a small group and in a separate location, instructions simplified and read to him, use of a calculator, doubled time to complete the test, and a reduced number of test questions per page. (T. 182.) Socially, Plaintiff interacted well with his peers and had many positive relationships. (T. 183.) His behavior was adequate. (T. 184.) Plaintiff's overall health was "good" and his asthma was controlled with an inhaler "when wheezing." *Id*.

**B.     Medical Records**

On February 6, 2014, Plaintiff presented to Anne Barash, M.D., for treatment of acute asthma exacerbation. (T. 301-02.) Dr. Barash noted Plaintiff was using his inhaler incorrectly, and reviewed the proper technique with him. (T. 302.) On March 11, 2015, Plaintiff returned for an annual examination, reporting his asthma was well controlled and he took his medication as prescribed. (T. 339.) However, he could not remember the last time he used his inhaler. (T. 339.) Plaintiff reported smoking one pack of cigarettes per day, occasional cigars, and marijuana. *Id*. Dr. Barash commented: "Plaintiff's asthma is poorly controlled. He manages his own meds. I'm not sure he understands what he needs to do. He is self-conscious about his cognitive limitations so he is not willing to admit when he does not follow what I say." (T. 340.) She indicated Plaintiff had poor judgment and insight. (T. 341.) On July 20, 2015, Plaintiff reported his asthma had been fluctuating since his last visit, and was aggravated by exposure to heat, humid air, and smoking. (T. 344.)

### C. Function Report

In 2014, Plaintiff's mother completed a function report. (T. 218-225.) In terms of daily activities, she reported Plaintiff has no problems with personal care. (T. 218.) He can make sandwiches but does not know how to cook. *Id*. He listens to music, plays video games, watches television, rides a bicycle, does chores and yard work, and spends time with family and friends. (T. 218-19.) She reported Plaintiff does not drive and cannot read to pass the driver's test. *Id*. She indicated Plaintiff cannot count money and does not know how to tell time. *Id*. She needed to remind Plaintiff about his appointments, medication, and household chores. (T. 221-23.) She reported Plaintiff is easily frustrated and does not handle stress very well. (T. 224.)

### D. Opinion G. Kleinerman, M.D.

In 2014, State agency consultant Dr. Kleinerman opined Plaintiff had mild restrictions in activities of daily living, no difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation. (T. 77-79.) He stated Plaintiff "retains the RFC for unskilled work." (T. 79.)

### E. Hearing Testimony

On October 23, 2015, Plaintiff testified he is able to read, write, add, and subtract "a little bit." (T. 55.) He did not know his social security number. (T. 44.) He testified he can drive a car, but does not have a driver's license. (T. 56.) He buys marijuana and used to sell spike. (T. 53-54.) Plaintiff worked temporary summer jobs for his uncle fixing widows and floors, painting, sweeping, and mopping. (T. 56-57.) He also worked as a part-time summer recreation aide. (T. 57-59.) He testified he wants to work and has filled out some job applications but has not heard back from any employers. (T. 59.) Plaintiff reported using the stove to cook sausages

and Spam.  *Id*.  Plaintiff does household chores, helps his family, and socializes with friends.  (T. 61.)

Plaintiff's mother testified has to do "everything" for him.  (T. 64.)  She fills out his paperwork because he cannot read and does not know the information requested.  (T. 62-63.)  She explained Plaintiff does not have a driver's license because he cannot read to pass the test.  (T. 62.)  She takes him to all of his appointments because he cannot take public transportation.  (T. 62.)  He cannot budget or shop alone because he cannot count change, does not know what things cost, and cannot add up the prices.  (T. 64.)  She reported this was the first time hearing about the "drug thing."  (T. 65.)

The VE testified that a person of Plaintiff's age and education, with the RFC to perform simple and routines tasks, have frequent contact with supervisors, occasional contact with coworkers, and no contact with the public, **could tolerate only simple work-related decision making as part of the job and could tolerate only simple work-related changes in the job environment**, in addition to avoiding concentrated exposures to dust, odors, fumes, and pulmonary irritants could perform the jobs of dishwasher, packager, and janitor.  (T. 66-67, emphasis added.)

### F. Opinion of Sara Long, Ph.D.

On November 17, 2015, after the hearing, Dr. Long conducted both a consultative psychiatric and intelligence evaluation.  (T. 365-85.)  Dr. Long noted Plaintiff's mother drove him to the examination and attended the interview portion of the examination.  (T. 365.)

Upon examination, Plaintiff was cooperative with good social skills.  (T. 367.)  He was neat and well groomed, and his eye contact was appropriate.  *Id*.  His speech was fluent and clear with adequate receptive and expressive language.  *Id*.  He was coherent and goal directed.  *Id*.

There was no indication of any sensory or thought disorder. *Id*. He displayed a full range of appropriate affect in speech and thought content. *Id*. He was euthymic, his thoughts clear, and orientation intact. *Id*. Plaintiff subtracted 3 from 20 accurately, but slowly. *Id*. He repeated 3 objects immediately and after five minutes. *Id*. He completed 5 digits forward and 3 digits backwards. *Id*.

Plaintiff reported taking care of his own grooming, doing some cleaning and laundry, and outdoor landscaping. (T. 367.) Regarding cooking, it was reported "he don't know how." (T. 371.) Regarding shopping, he was reported to have difficulty counting money. (T. 367-68, 372.) His socialization and family relationships were reported to be good. (T. 368, 372.)

On the Wechsler Adult Intelligence Series – Fourth Edition ("WAIS-IV"), Plaintiff's scores were as follows: verbal comprehension 70, perceptual reasoning 71, working memory index 71, processing speed index 65, full scale IQ 64. (T. 371.)

Based on the mental status examination and intelligence testing, Dr. Long opined:

> There may be mild limitations regarding following and understanding simple directions and performing simple tasks. He needed directions repeated. He was able to maintain attention and concentration and appears able to maintain a regular schedule. He appears able to learn some new tasks. **Regarding complex tasks and making appropriate decisions, there appear to be marked limitations**. He is able to relate adequately with others and is capable of adequate stress management.
>
> Results of the present evaluation appear to be consistent with cognitive and substance abuse problems which appear to interfere with his ability to function on a regular basis.

(T. 368, 372, emphasis added.) Dr. Long diagnosed substance abuse and intellectual disabilities. (T. 368, 372.) She recommended vocational counseling, substance relapse prevention, and a life skills program. (T 368.) She found Plaintiff's prognosis was fair given the recommended

10

counseling, and noted "accommodations" would be required. *Id*. She recommended a payee be designated to handle Plaintiff's funds. (T. 368.)

In a mental capacity form[4], Dr. Long indicated mild limitation in the ability to understand and remember simple instructions; mild limitation in the ability to carry out simple instructions; **moderate and marked limitation in the ability to make judgment on simple work-related decisions**; marked limitation in the ability to understand and remember complex instruction; marked limitation in the ability to carry out complex instruction; and marked ability to make judgment on complex work-related decisions. (T. 382, emphasis added.) Dr. Long indicated Plaintiff's WAIS IV IQ is in the "extremely low range." *Id*.

She indicated no limitation in the ability to interact appropriately with co-workers; mild limitation in the ability to interact appropriately with the public and supervisors, and **marked limitation in the ability to respond appropriately to usual situations and to changes in a routine work setting**. (T. 383, emphasis added.) Dr. Long stated Plaintiff's WAIS IV IQ score "suggests time required for change" and "assistance required for problem solving." *Id*. While she indicated substance abuse was an issue, she found Plaintiff's IQ was "extremely low" independent of his reported use of cannabis. *Id*. Dr. Long recommended a payee due to substance use and poor math skills. (T. 384.)

---

[4] The form asked the doctor to check "None," "Moderate," "Marked," or "Extreme" for each category of mental functioning defined as follows: None – absent or minimal limitation; Mild – there is a slight limitation in this area but the individual can generally function well; Moderate – there is more than a slight limitation in this area but the individual is still able to function satisfactorily; Marked – there is serious limitation in this area; there is a substantial loss in the ability to effectively function; Extreme – there is a major limitation in this area; there is no useful ability to function in this area. (T. 382.)

## VI. ANALYSIS

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)). "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6; *accord* SSR 85-15, 1985 WL 56857 (Jan. 1, 1985). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 5:11-CV-0927 (LEK/ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's mental impairments. *Id.* § 404.1545(a)(3), (4). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Plaintiff argues the ALJ committed legal error by failing to reconcile discrepancies between his RFC assessment and Dr. Long's medical source opinion, to which he accorded great weight. (Dkt. No. 9 at 7-10.) The Commissioner responds the mental RFC is supported by

substantial evidence, the ALJ is not required to accept every portion of a medical source's opinion, and it is the function of the ALJ to resolve conflicting evidence. (Dkt. No. 10 at 10.)

In making the RFC determination, the ALJ accorded "great weight" to the opinion of Dr. Long, "who opined that [Plaintiff] had mild limitations understanding and performing simple tasks as well as marked limitations in understanding and completing complex tasks, with cognitive deficits that would require a representative payee (if he were awarded benefits)." (T. 34.) The ALJ noted Dr. Long was the last psychiatric professional to examine Plaintiff, and she administered standardized tests in addition to evaluating Plaintiff's general mental status. *Id*. As such, the ALJ found Dr. Long's "evaluation has the benefit of recency and objectivity." *Id*. Moreover, the ALJ found her assessment consistent with medical evidence of record documenting previous learning disabilities dating back to high school. *Id*.

Plaintiff contends, however, this "summary" ignores portions of Dr. Long's opinion that would have led the ALJ to conclude Plaintiff was unable to sustain work in the national economy. (Dkt. No. 9 at 8.) As Plaintiff correctly points out, the ALJ never acknowledged the more restrictive limitations in Dr. Long's opinion, let alone why he rejected them. *Id*. at 9-11.

For example, in the mental capacity form, Dr. Long opined Plaintiff had moderate to marked limitation in the ability to make judgments on simple work-related decisions (T. 382), which is in direct conflict with the ALJ's determination that Plaintiff was capable of "work requiring simple, job-related decisions." (T. 33-34, 382.) Significantly, Dr. Long also opined Plaintiff had marked limitations in the ability to respond to usual work situations and to changes in a routine work setting (T. 383), two of the basic demands of unskilled work:

> The basic mental demands of competitive, remunerative, unskilled
> work include the abilities (on a sustained basis) to understand,
> carry out, and remember simple instructions; to respond
> appropriately to supervision, coworkers, and usual work situations;

13

> and to deal with changes in a routine work setting. A substantial
> loss of ability to meet any of these basic work-related activities
> would severely limit the potential occupational base. This, in turn,
> would justify a finding of disability because even favorable age,
> education, or work experience will not offset such a severely
> limited occupational base.

SSR 85-15, 1985 WL 5685, at *4 (SSA Jan. 1, 1985). She noted that time would be required for change, Plaintiff needed assistance with problem solving, and instructions needed to be repeated. (T. 368, 383.) She also indicated "accommodations" would be required. (T. 368.) Plaintiff argues the ALJ cannot selectively choose portions of an opinion to support his decision. (Dkt. No. 9 at 9.) Plaintiff contends this error requires remand. *See Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) ("While the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, [he] cannot simply selectively choose evidence in the record that supports [his] conclusions.") (citations omitted). Moreover, Plaintiff argues "it is legal error for the ALJ to create a RFC assessment that conflicts with a portion of a medical source statement which was accorded great weight." (Dkt. No. 8 at 8, citing *Dioguardi*, 445 F. at 297.)

"The ALJ may, in reconciling conflicting evidence, reject portions of a medical opinion and accept other portions of that same opinion." *Bleil v. Colvin*, No. 3:15-CV-1492 (LEK/ATB), 2017 WL 1214499, at *6 (N.D.N.Y. Mar. 31, 2017) (quoting *Marrese v. Colvin*, No. 15-CV-6369, 2016 WL 5081481, at *3 (W.D.N.Y. Sept. 16, 2016)); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). "But when an ALJ credits only portions of a medical source opinion, the ALJ must explain why

other portions of the opinion were rejected." *Bleil*, 2017 WL 1214499, at *6 (citing *Raymer v. Colvin*, No. 14-CV-6009 (MWP), 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015).

In this instance, the ALJ's failure to explain why he chose not to incorporate certain limitations set forth in the medical source statement despite explicitly affording great weight to Dr. Long's opinion leaves the ALJ's otherwise thorough decision lacking the clarity necessary to enable this Court to determine whether the ALJ's findings are supported by substantial evidence. *See Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.' ") (quoting *Morgan ex rel. of Morgan v. Chater*, 913 F. Supp. 184, 188-89 (W.D.N.Y. 1996)); *Booker v. Astrue*, 07-CV-0646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing *Ferraris v. Heckler*, 728 F.2d at 587); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.") (quotation marks and citation omitted)); *Lee v. Astrue*, No. 10-CV-6036 (CJS), 2011 WL 1675101, at *7-8 (W.D.N.Y. May 4, 2011) (finding error meriting remand where the ALJ's decision was internally inconsistent).

The Court notes that a lack of explanation is not error where the reviewing court can determine the underlying rationale. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) ("Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence

15

unpersuasive or insufficient to lead him to a conclusion of disability.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). However, this is not such a case.

To be sure, in terms of Plaintiff's alleged diminished intellectual functioning, the ALJ noted Plaintiff's daily activities were not as limited as one would expect giving his complaint of disabling symptoms and limitations. (T. 38.) The ALJ noted Plaintiff testified he was able to prepare simple meals (such as a sandwich), attend to his personal care, travel independently and ride his bicycle every day, play video games, perform "all chores" around the house, and engage in landscaping. (T. 34.) However, the ALJ's decision does not explain how Plaintiff's ability to perform activities of daily living at his home "translated to the ability to perform the mental demands of substantial gainful work in a typical competitive workplace environment." *Coyle v. Comm'r of Soc. Sec.*, No. 5:17-CV-0924 (WBC), 2018 WL 3559073, at *7 (N.D.N.Y. July 24, 2018) (citing *McGregor v. Astrue*, 993 F. Supp. 2d 130, 142 (N.D.N.Y. 2012) (quoting *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000) ("[I]t is well-settled that the ability to perform basic activities of self-care activities do not by themselves contradict allegations of disability[.]"))); *Harris v. Colvin*, 149 F. Supp. 3d 435, 445 (W.D.N.Y. 2016) (there is "nothing inherent" in reading, watching television, and other basic activities of daily living to prove a plaintiff has the ability to perform the basic mental demands of work).

Furthermore, while the ALJ accorded "substantial weight" to the opinion of State agency psychiatric consultant Dr. Kleinerman, who reviewed the evidence of record and determined that Plaintiff retained the "RFC for unskilled work," the ALJ noted Dr. Kleinerman did not have the benefit of Dr. Long's post-hearing consultative examination report and, as a result, although Dr. Kleinerman's opinion generally [wa]s consistent with Dr. Long's finding, Dr. Kleinerman's

16

opinion d[id] not reflect the claimant's most current mental status examination and intelligence testing." (Dkt. No. 10 at 10; T. 35, 79.)

Because this Court cannot determine the ALJ's underlying rationale and it is not clear from the ALJ's decision why certain opinions of Dr. Long, which was accorded great weight, were not adopted, the RFC is not supported by substantial evidence. *See e.g.*, *Dioguardi*, 445 F. Supp. 2d at 297 ("Under the Commissioner's own rule, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'") (quoting SSR 96-8p, 1996 WL 374184, at *7). The ALJ erred when he rejected portions of Dr. Long's opinion favorable to Plaintiff's claim, without any explanation whatsoever. Therefore, remand is required.

**ACCORDINGNLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that the decision of the Commissioner is **VACATED** and **REMANDED** pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: September 18, 2018
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge